# In the United States Court of Federal Claims

No. 15-69C
(Filed: March 17, 2016)



| | |
|---|---|
| * * * * * * * * * * * * * * * * * | |
| * | Keywords: Motion to Dismiss for |
| DEWAYNE F. ADAMS, et al., * | Lack of Jurisdiction; RCFC |
| * | 12(b)(1); 5 U.S.C. § 6101(a)(3); |
| Plaintiffs, * | Money Mandating Statute. |
| * | |
| v. * | |
| * | |
| THE UNITED STATES OF AMERICA, * | |
| * | |
| Defendant. * | |
| * | |
| * * * * * * * * * * * * * * * * * | |

*Linda Lipsett*, Bernstein & Lipsett, P.C., Washington, DC, for Plaintiffs. *Jules Bernstein*, Bernstein & Lipsett, P.C., Washington, DC, *Of Counsel*. *Edgar James*, *Ryan E.* Griffin, James & Hoffman, P.C., Washington, DC, *Of Counsel*.

*Hillary A. Stern*, Senior Trial Counsel, with whom were *Benjamin C. Mizer*, First Principal Deputy Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

### BACKGROUND[1]

Plaintiffs in this action are current and former Physical Security Specialists employed by the United States Secret Service (USSS), Department of Homeland Security (DHS), in the agency's Technical Security Division (TSD). Fourth Amended Compl. (Compl.) ¶¶ 9, 12, ECF No. 31.[2] Plaintiffs contend that the USSS engaged in a variety of unlawful scheduling and recordkeeping practices and that they were denied the overtime pay to which they were entitled

---

[1] The facts set forth in this section are based on the unchallenged allegations in Plaintiffs' complaint, which the Court accepts as true for purposes of ruling on the government's motion to dismiss. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

[2] TSD is responsible for providing a technically secure environment for the President, the Vice President, and other protectees. Compl. ¶¶ 9–10.

under Title 5 of the United States Code and the Fair Labor Standards Act, 29 U.S.C. §§ 207–19 (FLSA). Specifically, Plaintiffs allege that the USSS has violated provisions of the Federal Employees Pay Act (FEPA), 5 U.S.C. § 6101(a)(3), governing the scheduling of tours of duty and days off within the basic 40-hour workweek (Count I); the record-keeping provisions of the FLSA, 29 U.S.C. § 211(c) (Count II); and the requirement in 5 U.S.C. § 5545(c)(2) that the USSS maintain accurate records of hours of administratively uncontrollable overtime worked by the Plaintiffs (Count III). They seek an award of backpay, liquidated damages, and interest, pursuant to the FLSA and the Back Pay Act, 5 U.S.C. § 5596(b).

The case is currently before the Court on the government's partial motion to dismiss Count I of Plaintiffs' Amended Complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. In Count I, Plaintiffs challenge the lawfulness of two scheduling practices that the USSS allegedly adopted to reduce the agency's reliance on overtime to accomplish its mission. The new practices were instituted in the wake of the automatic spending cuts that went into effect in 2013 pursuant to the Balanced Budget and Emergency Deficit Control Act of 2011. See Def.'s Partial Mot. to Dismiss (Def.'s Mot.) at 2, ECF No. 25. The practices remained in effect until January 18, 2015. Id. at 4.

First, Plaintiffs challenge the agency's modification of Plaintiffs' regular Monday-to-Friday workweek. Plaintiffs allege that under the new practice, one day in the middle of the week would be designated a non-work day (or "flex day"), and that Saturday—which had previously been a day off—would be designated a workday. Compl. ¶ 17. According to Plaintiffs, this new practice violated 5 U.S.C. § 6101(a)(3)(B), which provides that:

> Except when the head of an Executive agency . . . determines that his organization would be seriously handicapped in carrying out its functions or that costs would be substantially increased, he shall provide, with respect to each employee in his organization, that . . . the basic 40-hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive.

See Compl. ¶ 17. Second, Plaintiffs allege that USSS sometimes implemented the new schedules by modifying Plaintiffs' regular schedules after their workweeks had begun. According to Plaintiffs, these actions violated 5 U.S.C. § 6101(a)(3)(A), which requires tours of duty to be scheduled at least one week in advance. Compl. ¶¶ 18–19.

Plaintiffs argue that, as a result of the new practices, they were denied the two consecutive days off from work to which they are statutorily entitled. Further, they contend that the new practice of having them work on a Saturday and take a day off midweek deprived them of: (1) pay at their regular rate for the unpaid midweek flex days; and (2) overtime pay to which they would have been entitled for working an additional day outside their regular workweek, but for the midweek flex days. Id.

The government argues that this Court lacks jurisdiction over Count I of Plaintiffs' complaint on the grounds that subsections 6101(a)(3)(A) and (B) are not "money-mandating" statutory provisions. For the reasons set forth below, the Court agrees with the government.

Accordingly, the government's motion to dismiss in part is **GRANTED** and Count I of Plaintiffs' complaint is **DISMISSED** without prejudice.[3]

## DISCUSSION

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 215 (1983), but it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

A statute or regulation is money-mandating for jurisdictional purposes if it "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s]." Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc in relevant part) (quoting Mitchell, 463 U.S. at 217). To determine whether a statute is money-mandating, the court must evaluate the extent to which the statute or statutes at issue impose a specific obligation on the government to pay money where statutory conditions are satisfied. Samish Indian Nation v. United States, 657 F.3d 1330, 1335 (Fed. Cir. 2011), vacated in part on other grounds, 133 S. Ct. 423 (2012). The statute must "create[] an entitlement by leaving the Government with no discretion over the payment of funds." Id. at 1336 (citing Doe v. United States, 100 F.3d 1576, 1581 (Fed. Cir. 1996)). Additionally, the Federal Circuit has articulated that in "limited situations," the "money-mandating" requirement may be satisfied if even if a statute reserves to the government discretion over the disbursement of funds where the statute: "(1) provides 'clear standards for paying' money to recipients; (2) states the 'precise amounts' that must be paid; or (3) as interpreted, compels payment on satisfaction of certain conditions." Id. (quoting Perri v. United States, 340 F.3d 1337, 1342–43 (Fed. Cir. 2003)).

The relevant statutory provisions at issue in this case are 5 U.S.C. § 6101(a)(3)(A) & (B). They provide as follows:

> Except when the head of an Executive agency . . . determines that his organization would be seriously handicapped in carrying out its functions or that costs would be substantially increased, he shall provide, with respect to each employee in his organization, that –

---

[3] The government also argues, on the merits, that the agency did not violate 5 U.S.C. § 6101(a)(3)(A) and (B). See Def.'s Mot. at 8. Even assuming those issues could properly be raised in the context of a motion to dismiss under Rule 12(b)(1), the Court does not reach them in light of its conclusion that it lacks subject matter jurisdiction to do so.

> (A) assignments to tours of duty are scheduled in advance over periods of not less than one week; [and]
>
> (B) the basic 40-hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive.

5 U.S.C. § 6101(a)(3); see also 5 C.F.R. § 610.121(a).

Neither of these subsections addresses employees' entitlement to pay. Instead, they concern work scheduling practices. As the Federal Circuit has already held, money damages may not be awarded for a violation of section 6101(a)(3)(B) because "[n]either [5 U.S.C. § 6101] nor the regulations promulgated thereunder prescribes any penalty for failure by the government to comply with the scheduling requirements governing the number of consecutive days worked." Sanford v. Weinberger, 752 F.2d 636, 640 (Fed. Cir. 1985). In other words, the Federal Circuit has already recognized that subsection 6101(a)(3)(B) is not a "money mandating" statute. Id. (observing that "[a] fundamental precept of law holds that no monetary damages can be awarded against the United States unless some provision of law commands the payment of same." (citing Testan, 424 U.S. at 399)). The same is true, of course, as to the requirement that tours of duty be scheduled at least one week ahead of time, contained in subsection (A).

Plaintiffs contend, however, that Sanford is not controlling, arguing that the Court of Appeals' discussion of the jurisdictional issue in that case was dicta. As Plaintiffs correctly observe, the Court of Appeals discussed whether section 6101(a)(3)(A) provided a basis for recovery of overtime pay only after it had already addressed and rejected the merits of the plaintiffs' claims that the statute had been violated. Dicta are "statements made by a court that are 'unnecessary to the decision in the case, and therefore . . . not precedential (although [they] may be considered persuasive).'" Nat'l Am. Ins. Co. v. United States, 498 F.3d 1301, 1306 (Fed. Cir. 2007) (alteration in original) (quoting Co–Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1307 (Fed. Cir. 2004))). But jurisdiction is a threshold issue that the Court must address before examining the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). Given that subject matter jurisdiction is a threshold issue, the Court is hesitant to characterize the Court of Appeals' discussion of its subject matter jurisdiction as non-binding "dicta."

In any event, even if the jurisdictional discussion in Sanford were considered "dicta," the Court would still conclude that subsections 6103(a)(3)(A) and (B) are not money mandating statutory provisions. Thus, neither provision "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s]." See Fisher, 402 F.3d at 1173. Rather, at most, subsections 6103(a)(3)(A) and (B) entitle Plaintiffs to have their basic 40-hour workweek scheduled in a particular fashion, unless the agency head finds that to do so would seriously handicap the agency in carrying out its functions or substantially increase its costs. As noted, absent such findings, the statute requires the workweek to be scheduled over five days, Monday through Friday where possible, with two consecutive days off. But whether Plaintiffs' basic 40-hour workweek is Monday through Friday with Saturday and Sunday off, or Monday through Saturday with Wednesday and Sunday off, does not—in and of itself—affect employees' statutory entitlement to pay.

The critical flaw in Plaintiffs' jurisdictional argument is revealed by Plaintiffs' assertion that by scheduling a "flex day" for Plaintiffs on a Wednesday, for example, and making Saturday a workday, "defendant failed to pay [P]laintiffs basic pay for Wednesday and overtime pay for Saturday, as required under law." Compl. ¶ 17. These purported legal requirements cannot be found in 5 U.S.C. § 6101(a)(3) (or any other provision of Title 5) because Plaintiffs have no statutory entitlement to be paid their regular salary on a day they do not work (such as on a mid-week flex day). Nor do they have any statutory entitlement to receive overtime pay for Saturday if they do not put in overtime hours on Saturday.

The Court is not persuaded by Plaintiffs' reliance upon Gahagan v. United States, 19 Cl. Ct. 168 (1989), in which the court observed that "[s]ection 6101 delineates scheduling practices which entitle federal employees to pay" and that therefore, "violations of § 6101 deprive federal employees of pay." Id. at 172 (discussing Acuna v. United States, 479 F.2d 1356, 1364 (Ct. Cl. 1973), cert. denied, 416 U.S. 905 (1974)). For one thing, this broad assertion is inconsistent with the jurisdictional holding in Sanford. For another, decisions by the Claims Court, like decisions by the Court of Federal Claims, "while persuasive, do not set binding precedent for separate and distinct cases." W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994).

Moreover, and in any event, the court's language in Gahagan must be read in the context of the claims that were actually at issue in that case. Those claims were based on subsection (E) of section 6101(a)(3), a provision that is distinguishable in its purposes and effects from subsections (A) and (B). See 19 Cl. Ct. at 172. Subsection (E) provides that unless an agency head "determines that his organization would be seriously handicapped in carrying out its functions or that costs would be substantially increased . . . the occurrence of holidays may not affect the designation of the basic workweek" with respect to each employee. 5 U.S.C. § 6101(a)(3)(E). As the court observed in Gahagan, the purpose of subsection (E) is to make scheduling of each employee's basic workweek "holiday blind." 19 Cl. Ct. at 172. The plaintiffs in Gahagan alleged that the agency violated subsection (E) when it manipulated their existing schedules for the purpose of preventing their basic workweeks from including a holiday. As a direct result of these manipulations, the plaintiffs received regular pay for all 40 hours in their administrative workweek. Had the agency not violated the statute they would have worked the holiday and received premium pay for that workday.

Thus, the court concluded in Gahagan that subsection (E) might fairly be interpreted as mandating compensation for its violation because it creates an entitlement on the part of employees to not have their workweeks manipulated to prevent workdays from falling on a holiday, which would entitle them to receive premium pay pursuant to 5 U.S.C. § 5546(b). It was in this context that the court stated that "[s]ection 6101 delineates scheduling practices which entitle federal employees to pay." See 19 Cl. Ct. at 172. In contrast, as described above, compliance with subsections (A) and (B) would not provide Plaintiffs with an entitlement to pay that is different or greater than their entitlement under the new allegedly non-compliant schedules.

Finally, Plaintiffs' reliance upon the Back Pay Act as a basis for subject matter jurisdiction is unavailing. That Act authorizes an appropriate authority to award backpay and interest where an employee can show that he suffered an unjustified personnel action which "resulted in the . . . reduction of all or part of the pay . . . of the employee." 5 U.S.C. § 5596

(b)(1). Specifically, the employee is "entitled . . . to receive for the period for which the personnel action was in effect . . . an amount equal to all or any part of the pay . . . that the employee normally would have earned or received during the period if the personnel action had not occurred." Id. § 5596 (b)(1)(A)(i).

As the Federal Circuit has made clear, "[u]nless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable." Spagnola v. Stockman, 732 F.2d 908, 912 (Fed. Cir. 1984) (quoting United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1982); see also Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir. 1999) (Back Pay Act is a "money-mandating" statute "when based on violations of statutes or regulations covered by the Tucker Act."). Thus, "the Back Pay Act 'is merely derivative in application; it is not itself a jurisdictional statute.'" Spagnola, 732 F.2d at 912 (quoting Connolly, 716 F.2d at 887). Here, because neither subsection 6101(a)(3)(A) nor subsection 6101(a)(3)(B) "commands payment of money to the employee," and because neither subsection is reasonably amenable to the reading that it mandates a right to money damages, violations of the two subsections do not implicate the remedies prescribed in the Back Pay Act. Thus, the Back Pay Act cannot supply this Court with jurisdiction. See id.

In short, Plaintiffs have failed to show that the statutory provisions upon which they rely—5 U.S.C. § 6103(a)(3)(A) & (B)—are money mandating. Accordingly, this Court lacks Tucker Act jurisdiction over Count I of the complaint.

## CONCLUSION

On the basis of the forgoing, the government's partial motion to dismiss Count I of the complaint is **GRANTED** and Count I is **DISMISSED** without prejudice.[4]

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Judge, U.S. Court of Federal Claims

---

[4] Plaintiffs filed a motion for leave to file a supplemental brief on March 16, 2016, two days after the oral argument held in this case. The brief addresses whether Plaintiffs have stated a claim for relief under the Back Pay Act. In light of the Court's decision granting the government's partial motion to dismiss for lack of jurisdiction, Plaintiffs' motion for leave to file a supplemental brief is **DENIED** as moot.